IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **YOLANDA HILL,** | } <br> } <br> } |
| **Plaintiff,** | } <br> } |
| v. | }     Case No.: 2:24-CV-01054-RDP <br> } |
| **ACTING COMMISSIONER OF SOCIAL SECURITY ADMINSITRATION** | } <br> } <br> } <br> } |
| **Defendant.** | } |

**MEMORANDUM OF DECISION**

Plaintiff Yolanda Hill brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income ("SSI"). *See also* 42 U.S.C. § 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court concludes the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed her application for SSI alleging disability beginning September 23, 2021. (Tr. 197-205). The claim was denied initially on July 21, 2022 and upon reconsideration on March 15, 2023. (Tr. 117, 131). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). On November 15, 2023, ALJ Jerome Munford conducted a hearing on Plaintiff's claims. (Tr. 32-66). In his decision, dated March 26, 2024, the ALJ determined that Plaintiff has not been under a disability as defined

in the Social Security Act since September 23, 2021. (Tr. 27). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 7, 2024 (Tr. 1), that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff testified that she was 56 years old and that she has a high school education with one year of college. (Tr. 44, 49). Plaintiff previously worked as a hair stylist and as a home caregiver. (Tr. 50, 234). Plaintiff alleges that she suffers from the following conditions: fibromyalgia, vertigo, lumbar spinal stenosis, rheumatoid arthritis, sciatic nerve pain in her right leg, neuropathy in her right leg, an inability to stand for long periods of time, carpal tunnel syndrome, and nerve damage in her fingers. (Tr. 233). According to Plaintiff, she has been unable to engage in substantial gainful employment since at least September 23, 2021. (Tr. 38, 233).

Plaintiff further alleges that for a number of reasons, including her inability to use her hands or stand for periods of time, she is unable to work. (Tr. 38, 39). Plaintiff stated that her right hand gets stiff causing her to drop things, and that her right leg goes numb and "gives out" making her unable to stand on her right leg. (Tr. 38, 245-49). She complains of chronic pain resulting from injuries sustained in an automobile accident "years ago" (Tr. 398), possibly around 2015 or 2016. (Tr. 38).

Plaintiff testified that in a normal day she is unable to prepare meals that consist of anything more than a simple sandwich or microwaveable meal. (Tr. 39, 41). On most days, Plaintiff's mother prepares her meals and her son delivers those meals to her. (Tr. 40). Plaintiff further testified that while her son handles the majority of her indoor chores, such as sweeping, mopping, and doing dishes, she is able to fold laundry. (Tr. 41-42). Plaintiff

alleges that she spends nine to ten hours a day sitting and watching TV and is unable to drive. (Tr. 42, 44).

Plaintiff has seen a number of healthcare providers in an effort to navigate her pain and impairments. In August 2021, Plaintiff visited a pain specialist, Dr. Richard Thoma. (Tr. 301). Dr. Thoma diagnosed chronic pain syndrome, carpal tunnel syndrome, lumbar radiculopathy, left shoulder pain, low back pain, and degeneration of lumbar intervertebral disc. (Tr. 301-305). And, Dr. Thoma prescribed Gabapentin and Visatril to help alleviate Plaintiff's symptoms. (Tr. 304).

Plaintiff visited her primary care physician, Dr. Alred, in November 2021. (Tr. 328). Dr. Alred diagnosed spinal stenosis, right leg radiculopathy, and chronic pain. *Id.* And, Dr. Alred prescribed Cymbalta and Percocet. (*Id.*). Throughout 2023, Plaintiff was prescribed Percocet and Lyrica at Southern Wellness to help her deal with pain symptoms when she presented with complaints of chronic pain and numbness in her right hand. (Tr. 405-15). Notes from the treatment appointments indicate signs of improvement and pain management. (Tr. 434-40).

Plaintiff was seen by Certified Registered Nurse Practioner ("CRNP") Woodrow in September 2023 at Absolute Health and Wellness when Plaintiff presented with complaints of chronic pain. (Tr. 398). Woodrow diagnosed Plaintiff with inflammatory polyneuropathy and chronic low back pain. (Tr. 400). Woodrow completed a Physical Capacities Evaluation in November 2023 that outlined Plaintiff's long-term physical limitations resulting from chronic back pain, polyneuropathy, and partial paralysis. (Tr. 417-18). Woodrow opined that Plaintiff was limited to sitting two to three hours total and standing or walking one to two hours total in an eight hour workday. (Tr. 417). She further

3

commented that Plaintiff could frequently lift one pound and occasionally five pounds. (*Id.*). Additionally, Woodrow opined that Plaintiff could never work around hazardous machinery, and rarely push and pull, climb, balance, perform gross manipulations, perform fine manipulations, reach, bend, stoop, or operate motor vehicles. (*Id.*). Finally Woodrow estimated that Plaintiff would miss work more than three times a month due to her impairments or treatments. (Tr. 418).

Regarding Plaintiff's alleged cardiovascular impairments, Plaintiff presented to the emergency department at Brookwood Shelby Baptist Medical Center in June 2022 with complaints of chest pain, shortness of breath, and pedal edema. (Tr. 340). Diagnostic imaging and laboratory tests indicated sinus tachycardia and hyperthyroidism. (Tr. 340-42). Plaintiff's symptoms resolved with prescriptions of Lasix and Metoprolol. (Tr. 340). The discharge physician advised Plaintiff to follow up with an endocrinologist. (Tr. 338).

A year later, in September 2023, Plaintiff presented to cardiologist, Dr. Mehta, with complaints of an elevated heart rate. (Tr. 428). Plaintiff reported that she had not been compliant with her prescribed treatment, Metoprolol. (*Id.*). Dr. Mehta diagnosed Plaintiff with sinus tachycardia and advised her to begin taking Metoprolol again as prescribed to control her heart rate. (Tr. 431).

During the hearing, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual of the same age, education, and employment history as Plaintiff who could only perform work with the following limitations: could not climb ladders, ropes, scaffolds, or ramps; could not be exposed to unprotected heights or operate hazardous machinery; could not drive, but could occasionally climb stairs. (Tr. 58-59). The VE testified that there were sufficient "medium work" opportunities for such a hypothetical

individual, such as a hand packer, kitchen helper, and dining room attendant. (Tr. 59). The VE also testified that there were sufficient "light work" opportunities for such an individual, such as a routing clerk, a mailroom sorter, and a marker. (Tr. 59). The ALJ then asked if there would be any "sedentary work" opportunities available for such an individual. The VE testified that there were sufficient sedentary work opportunities for such an individual, such as a document preparer, a ticket checker, and an addresser. (Tr. 60). Next, the ALJ asked the VE if the hypothetical individual could perform either of the two jobs in Plaintiff's past relevant work. The VE testified in the affirmative, that the individual could work either as a hair stylist, or as a "home attendant as generally performed." (Tr. 60).

The ALJ then asked if the sedentary and light work opportunities would still be available if the hypothetical individual was further limited to occasional stooping, crouching, kneeling, and crawling. (Tr. 61). The VE testified that the hypothetical individual would be able to perform the same sedentary and light work jobs. (Tr. 61). When the ALJ asked if that same hypothetical individual with these additional restrictions could perform the medium work jobs, the VE testified that the individual would not be able to work as a kitchen helper, but would be able to work as a dining room attendant and a hand packer. (Tr. 61). The ALJ also asked what degree of dominant hand use for fine and gross manipulation would be required for all three categories of work, as well as the jobs in Plaintiff's past relevant work. The VE testified that all the jobs noted in her testimony, including the jobs in Plaintiff's past relevant work, would require constant use of the dominant hand for fine fingering and gross manipulation. (Tr. 62-63).

Finally, the ALJ asked if any work would be available for a hypothetical individual who is only able to occasionally lift or carry five pounds; only able to sit for two to three hours; only able to stand or walk for one to two hours; able to rarely push or pull with her upper or lower extremities; able to rarely climb, reach, or reach overhead; and only able to bend or stoop. The VE opined that these limitations would eliminate all work opportunities. (Tr. 64-65).

## II.  ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id*. § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id*. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id*. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. *Id*. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id*. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id*. §§ 404.1520(d), 404.1525, and 404.1526. If these criteria are met, the claimant is declared disabled. *Id*. § 404.1520(a)(4)(iii).

6

Case 2:24-cv-01054-RDP    Document 18    Filed 06/26/25    Page 7 of 13

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. *Id.* § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id*. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. *Id*. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id*. §§ 404.1520(g), 404.1560(c).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since September 23, 2021. (Tr. 19). The ALJ evaluated Plaintiff's testimony and found her description of the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the preponderance of the objective clinical evidence. (Tr. 22-23). After consideration of the entire record, the ALJ found that Plaintiff has the RFC to perform work at a medium level of exertion as defined in 20 C.F.R. 416.967(c) with the following limitations: cannot climb ladders, ropes, scaffold or ramps; can occasionally climb stairs; cannot be exposed to unprotected heights; cannot operate hazardous machinery or drive; and can occasionally stoop, crouch, kneel, and crawl. (Tr. 22).

7

Based on this RFC, the ALJ concluded that Plaintiff is unable to perform any past relevant work and that transferability of job skills is not material to the determination of disability. (Tr. 25-26). *See* 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 82-41. The ALJ further found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform when considering her age, education, work experience, and RFC. (Tr. 26). Based upon the medical evidence presented, the ALJ concluded that Plaintiff has severe impairments of spinal stenosis and sinus tachycardia. (Tr. 19). Additionally, the ALJ found that Plaintiff has the following non-severe impairments: attention deficit disorder, hypertension, and hyperthyroidism. (Tr. 19-20). Nevertheless, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21). Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act and, therefore, is not entitled SSI. (Tr. 26-27).

### III.     Plaintiff's Argument for Remand

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed and remanded for consideration. She argues that the ALJ failed to properly evaluate the medical opinion evidence, failed to properly determine her RFC, and failed to properly evaluate her subjective statements. (Pl.'s Mem., Doc. #10 at 12).

### IV.     Standard of Review

The only issues before this court are whether there is substantial evidence in the record to sustain the ALJ's findings, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied correct legal standards. *See*

*Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 120, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See id.* While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.   Discussion**

After careful review, the court concludes that the ALJ's decision is supported by substantial evidence and that he applied the law correctly.

    **A.   Substantial evidence supports the ALJ's evaluation of the medical opinion evidence.**

For claims filed after March 27, 2017, the ALJ evaluates medical opinion evidence for persuasiveness by considering the following factors: supportability, consistency, the nature of the relationship with the claimant, and other factors. 20 C.F.R. § 416.920c(c). The two most important factors in determining the persuasiveness of medical opinion

evidence are supportability and consistency. *Id*. § 416.920c(b)(2). "Supportability" is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)" *Id*. § 416.920c(c)(1). "Consistency" is defined as how consistent the medical opinion "is with the evidence from other medical sources and nonmedical sources." *Id*. § 416.920(c)(2). The ALJ is only required to articulate how he evaluated the medical opinion evidence in light of the entire case record, applying the evaluating factors as appropriate. *See id*.

Here, the ALJ found C.R.N.P. Woodrow's opinion unpersuasive and sufficiently articulated its reasoning for doing so. This has allowed the court to trace the path of his reasoning. The ALJ found the "extreme limitations" assessed by Woodrow to be "unsupported by the objective medical evidence." (Tr. 25). In support of this finding, the ALJ cited to reduction in pain and improvements in medical condition that are indicated in Plaintiff's medical records as well as the "perfect[]" regulation of Plaintiff's sinus tachycardia symptoms with medication. (Tr. 25). Additionally the ALJ addressed both the supportability and consistency of Woodrow's medical opinion in light of the entire record of medical evidence. (Tr. 25). While the ALJ's reasoning may be succinct, Plaintiff's assertion that "[t]he ALJ failed to cite to any *specific* medical facts . . . in the record" to support his finding is incorrect. (Doc. #10 at 8). Substantial evidence supports the ALJ's findings regarding Woodrow's opinion. *See* 42 U.S.C. § 405(g); *Walden*, 672 F.2d at 838.

**B.     The ALJ properly evaluated Plaintiff's subjective statements.**

Plaintiff also contends that, in determining her RFC, the ALJ improperly evaluated her subjective statements regarding the disabling effects of her impairments. (Pl.'s Mem., Doc. #10 at 8). To establish disability through subjective testimony, a claimant must show

"(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonable expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).

If a claimant satisfies this test, the inquiry shifts to whether and to what extent the claimant's symptoms limit her capacity to work. 20 C.F.R. § 404.1529(a). This requires the ALJ to determine "the intensity, persistence, and functionally limiting effects" of a claimant's pain based on the record as a whole. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (per curiam). The ALJ "must articulate explicit and adequate reasons" for discrediting a claimant's subjective testimony. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). However, to be clear the ALJ is not required to quote the standard verbatim while applying it. *See id.*, at 1225-26.

Here, the ALJ found that Plaintiff's testimony regarding "the intensity, persistence, and limiting effects of her impairments" were not entirely consistent with the record evidence. (Tr. 22-23). The ALJ reasoned that diagnostic imaging showed only minor degenerative changes to Plaintiff's spine and no severe abnormalities. (Tr. 23). The ALJ also noted the related treatments Plaintiff has received and the corresponding treatment notes indicating their apparent ameliorative effects. (Tr. 23-24). Contrary to Plaintiff's assertion that the ALJ improperly "cherry pick[ed] normal findings from the record" (Doc. # 17 at 7), the treatment notes in the record indicate a continuous pattern through the relevant time of Plaintiff's pain responding well to treatment. (Tr. 401, 403, 404, 407, 434, 436, 437, 438, 440). The ALJ also noted that Plaintiff's treatment at Cahaba Pain and Spine

11

ended in August 2021 when she was evidently discharged from care when she tested positive for cocaine. (Tr. 23, 304).

Regarding Plaintiff's alleged cardiovascular symptoms, the ALJ reasoned that despite diagnostic evidence of sinus tachycardia and new onset hyperthyroidism, there are indications in the record that her symptoms were "controlled perfectly" with medication. (Tr. 24, 340). Additionally, the ALJ noted that Plaintiff was advised to follow up with an endocrinologist, but there is no evidence in the record she did so. (Tr. 24, 338). The ALJ did note that Plaintiff followed up with a cardiologist regarding sinus tachycardia symptoms; however, Plaintiff reported that she had not been taking her prescribed medication to control her symptoms. (Tr. 24, 431).

Here, Plaintiff contends that the ALJ did not provide "explicit and adequate reasons" for finding her subjective statements not entirely consistent with the record. (Doc. #10 at 10). This argument essentially asks the court to reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. This the court may not do. *See Martin*, 894 F.2d at 1529. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Even if this court would find differently based on the record evidence, it can only review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Finally, Plaintiff misinterprets the standard the ALJ is held to in assessing subjective testimony and the record evidence. Though Plaintiff characterizes the ALJ's findings as "conclusory" (Doc. #10 at 11), this court "will not disturb a clearly articulated" evaluation regarding subjective statements that are supported by substantial evidence, as is

12

the case here. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d at 780, 782 (11th Cir. 2014). In this case, the ALJ's reasoning repeatedly cites to the medical record and Plaintiff's testimony, and considers the entire record. After review, the ALJ found that Plaintiff's impairments limit her to a "medium level of exertion." (Tr. 22-25). The ALJ's evaluation of Plaintiff's subjective testimony is supported by substantial evidence and the ALJ applied correct legal standards.

## VI.    Conclusion

Plaintiff has shown no error in the Commissioner's decision – either in fact finding or in the application of legal standards. Accordingly, this court finds the ALJ's decision is due to be affirmed. A final order will be entered.

**DONE** and **ORDERED** this June 26, 2025.

                                          **R. DAVID PROCTOR**
                                          CHIEF U.S. DISTRICT JUDGE